UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN RICE | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| HENRY SCHEIN, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT

NOW COMES the Plaintiff, BRIAN RICE, by and through his attorneys, Joshua M. File and Bridgette A. Kolb, of Katz, Friedman, Eisenstein, Johnson, Bareck & Bertuca, P.C., and hereby complains against Defendant, HENRY SCHEIN, INC., as follows:

## NATURE OF ACTION JURISDICTION AND VENUE

1. This is an action for damages to redress employment discrimination on the basis of disability and retaliation pursuant to the Americans with Disabilities Act, ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*

2. Federal jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 1343(a)(3)-(a)(4).

3. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the underlying acts giving rise to this action took place within this judicial district.

4. Plaintiff filed a Charge of Discrimination on the basis of disability and retaliation with the Equal Employment Opportunity Commission, ("EEOC"), on February 19, 2021, within 300 days of the commission of the unlawful employment practices alleged herein. Exhibit A.

5. Plaintiff received a Notification of Right to Sue from the EEOC on July 6, 2021. Exhibit B.

6. This Complaint has been filed within 90 days of Plaintiff's receipt of the EEOC's Notification of Right to Sue.

**PARTIES**

7. Plaintiff, Brian Rice, is a citizen of the State of Illinois, domiciled in Mount Prospect, Illinois.

8. Defendant, Henry Schein, Inc., is a Delaware corporation, which operates its business in Chicago, Illinois.

9. Plaintiff and Defendant are both "persons" as defined under 42 U.S.C. § 2000e(a) and 42 U.S.C. § 12111(7).

10. Defendant is an "employer" as defined under 42 U.S.C. § 2000e(b) and 42 U.S.C. § 12111(5)(A).

**FACTUAL ALLEGATIONS**

11. Plaintiff is a veteran of the United States military, who suffers from the Post-Traumatic Stress Disorder, ("PTSD"); Obsessive-Compulsive Disorder, ("OCD"); and Tourette Syndrome, ("Tourette").

12. Plaintiff's conditions of PTSD, OCD and Tourette substantially limit him in one or more of the following major life activities and/or major bodily functions: thinking; concentrating; communicating; sleeping; performing manual tasks; working; brain function; immune function; and neurological function.

13. Plaintiff was initially hired by Defendant in or around September, 2017, to the position of Equipment Coordinator at Defendant's Chicago location.

14. At the time of hire, Plaintiff disclosed to Defendant that he suffers from the disabilities of PTSD, OCD and Tourette.

15. On or about June 4, 2018, Defendant promoted Plaintiff to the position of Operations Specialist at Defendant's Chicago location.

16. In or around October, 2018, Plaintiff filed a complaint through Defendant's internal Human Resources, ("HR"), hotline alleging that he had been subjected to discrimination and harassment by a co-worker on the basis of his disabilities.

17. At that time, Defendant's HR Department opened an internal investigation into Plaintiff's complaint, but ultimately took no action on his behalf.

18. On or about December 30, 2019, Plaintiff was hospitalized for approximately one week after suffering a panic attack as a result of his PTSD.

19. On or about January 8, 2020, Plaintiff provided Defendant with a doctor's note and requested temporary medical leave to care for his conditions of PTSD and OCD.

20. That same day, January 8, 2020, Defendant, through its Regional Manager, Justin Jourdan, and Regional Operations Manager, Nathan Smith, subjected Plaintiff to harassing and discriminatory remarks regarding his disabilities of PTSD and OCD.

21. On or about January 9, 2020, Plaintiff complained to HR about the discriminatory treatment he received from his Supervisors, Jourdan and Smith.

22. On or about January 28, 2020, in response to Plaintiff's January 8 request for medical leave, Defendant's HR Department sent Plaintiff paperwork to apply for intermittent FMLA and Short Term Disability, ("STD"), leave through Defendant's third-party administrator, Lincoln Financial Group.

23. Plaintiff ultimately did not apply for intermittent FMLA leave at that time.

24. In or around mid-March, 2020, the COVID-19 pandemic brought the Country to a stand-still; causing businesses throughout Illinois and the entire United States to shut down or substantially reduce operations.

25. On or about March 22, 2020, in response to Governor J.B. Pritzker's COVID-19-related emergency Executive Order(s), Defendant substantially altered its operations in Chicago by, *inter alia,* requiring the majority of its employees to work from home.

26. Notwithstanding its COVID-19-related work from home policy, Defendant still required Plaintiff to report to work in-person in March and April, 2020.

27. In or around early-April, 2020, Plaintiff made multiple requests to various managers and/or supervisors for Defendant to provide him with a reasonable accommodation under the ADA.

28. Specifically, Plaintiff requested to be permitted to work from home during the COVID-19 pandemic because his disabilities compromise his immune system and, therefore, make him more susceptible to contracting and falling seriously ill from COVID-19.

29. On or about April 16, 2020, Defendant, through its Senior Manager of Field Operations, Leann Lyons, approved Plaintiff's ADA reasonable accommodation request to work from home during the COVID-19 pandemic.

30. On or about April 20, 2020, Defendant informed Plaintiff that his position of Operations Specialist in Chicago was being eliminated, purportedly due to a company-wide reduction in force, ("RIF"), in response to the COVID-19 pandemic.

31. On or about May 7, 2020, Plaintiff accepted Defendant's offer of a severance package as part of that RIF, and voluntarily separated from employment with Defendant.

32. Significantly, from June, 2018, through April 24, 2020, the effective date of his voluntary separation, Plaintiff satisfactorily performed the essential functions of his job as an Operations Specialist for Defendant both with and without a reasonable accommodation.

33. In or around early June, 2020, approximately one month after Plaintiff's separation under the purported RIF, Defendant posted a job opening for a Regional Operations Manager position in Chicago.

34. According to Defendant's job posting, the Regional Operations Manager would perform substantially the same essential and day-to-day job functions that Plaintiff performed in his prior role as Operations Specialist in Chicago.

35. Accordingly, Plaintiff applied for that Regional Operations Manager position through Defendant's online job portal.

36. Plaintiff possesses all of the requisite skills and abilities to perform the essential functions of the Regional Operations Manager position, with or without a reasonable accommodation.

37. In fact, Plaintiff had temporarily filled the role of the Regional Operations Manager in Chicago from February through October, 2019.

38. However, Defendant refused to even consider Plaintiff for an interview for the Regional Operations Manager position in Chicago.

39. Ultimately, Defendant hired an individual to fill that Regional Operations Manager position who had no prior experience in the industry, and who was not disabled.

40. In or around November, 2020, Defendant posted a job opening for an Operations Specialist position in Milwaukee.

41. According to Defendant's job posting, the essential, day-to-day job functions for the Operations Specialist in Milwaukee were identical to the essential, day-to-day job functions of Plaintiff's former Operations Specialist position in Chicago.

42. Plaintiff possesses all of the requisite skills and abilities to perform the essential functions of the Operations Specialist position, with or without a reasonable accommodation.

43. Accordingly, in or around November, 2020, Plaintiff applied for that Operations Specialist position in Milwaukee through Defendant's online job portal.

44. In applying for that Operations Specialist position, Plaintiff informed Defendant that he would be willing to relocate to Milwaukee.

45. However, Defendant, once again, refused to even consider Plaintiff for an interview for the Operations Specialist position in Milwaukee.

46. That Operations Specialist position in Milwaukee remained unfilled for several months after Defendant refused to consider Plaintiff as a candidate for the position.

47. In or around February, 2021, Defendant posted a job opening for another Regional Operations Manager position in Chicago.

48. That Regional Operations Manager position was coded "115384" on Defendant's job portal, which is the identical code as Plaintiff's previous Operations Specialist position.

49. Plaintiff possesses all of the requisite skills and abilities to perform the essential functions of the Regional Operations Manager position, with or without a reasonable accommodation.

50. In or around February, 2020, Plaintiff applied for the Regional Operations Manager position in Chicago through Defendant's online job portal.

51. However, Defendant again refused to even consider Plaintiff as a candidate for that open Regional Operations Manager position in Chicago.

52. In or around May, 2020, shortly after Plaintiff filed the underlying EEOC Charge, Defendant blocked Plaintiff's access to its online job portal entirely.

53. Since May, 2020, Defendant has prevented Plaintiff from even having the opportunity and/or ability to apply for any open positions within the company because of his status as a disabled veteran and in retaliation for exercising his right to file an EEOC Charge.

54. Defendant's discriminatory and retaliatory actions toward Plaintiff have been willful, malicious and made with reckless disregard for Plaintiff's federally protected rights under the ADA.

## COUNT I

55. Plaintiff restates and reiterates each and every allegation contained in Paragraphs 1 through 54 above as though fully set forth and alleged herein.

56. Plaintiff is a "qualified individual with a disability" as that term is defined in Section 101(8) of the ADA. 42 U.S.C. § 12111(8).

57. Plaintiff's conditions of PTSD, OCD and Tourette substantially limit one or more of his major life activities and/or major bodily functions, as set forth above; he has a record of such impairment, and is regarding by Defendant as having such impairment.

58. Notwithstanding his disabilities, Plaintiff possesses the skills and abilities to perform the essential functions of the Operations Specialist and/or Regional Operations Manager positions in either Chicago or Milwaukee, with or without a reasonable accommodation.

59. Defendant has refused to hire Plaintiff to those positions, and has precluded him from consideration for hire to any other open positions because of his disabilities and in retaliation for engaging in protected activity under the ADA.

60. By virtue of its actions, Defendant has acted unlawfully, with malice and/or reckless disregard for Plaintiff's federally protected civil rights and in violation of Section 102(a) of the ADA. 42 U.S.C. § 12112(a).

61. As a result of Defendant's willful unlawful conduct, Plaintiff has been caused to incur substantial damages for lost wages, employment benefits, pain and suffering, emotional distress, and other pecuniary and non-pecuniary damages.

WHEREFORE, Plaintiff prays that this Court enter judgment in his favor and against Defendant as follows:

1. Find that Defendant's conduct alleged herein violates the ADA;

2. Award Plaintiff any and all monetary relief available to him as damages under the ADA, including but not limited to lost wages and benefits, compensatory and punitive damages;

3. Award Plaintiff any and all equitable relief available to him under the ADA including, but not limited to, reinstatement to employment with Defendant;

4. Award Plaintiff his costs, expenses and reasonable attorneys' fees;

5. Award Plaintiff any other and further relief which the Court may deem appropriate under the circumstances.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Respectfully Submitted,


by, /s/ *Joshua M. File*
    Joshua M. File, an attorney for Plaintiff


Joshua M. File
Bridgette A. Kolb
KATZ, FRIEDMAN, EISENSTEIN,
JOHNSON, BARECK & BERTUCA P.C.
77 West Washington Street, 20th Floor
Chicago, IL 60602
Ph: (312) 263-6330
Fx: (312) 372-5555
jfile@katzfriedman.com
bkolb@katzfriedman.com